IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 DEFERRED COMPENSATION EMPLOYEE SAVINGS TRUST; and INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 EDUCATIONAL TRAINING FUND, <br><br>        Plaintiffs, <br><br>vs. <br><br>ELMAR HOTEL MANAGEMENT, LLC, a Michigan Limited Liability Company; HANNA KARCHO, a/k/a HANNA KARCHO-POLSELLI, an Individual; and REMO POLSELLI, an Individual, <br><br>        Defendants. | CASE NO.: 25-cv-12124 <br><br>JUDGE: <br><br>MAGISTRATE JUDGE: |

## COMPLAINT

NOW COME the Plaintiffs, the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST ("WELFARE FUND"), the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 DEFERRED COMPENSATION EMPLOYEE SAVINGS TRUST ("SAVINGS FUND"), and the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 EDUCATIONAL TRAINING FUND ("TRAINING FUND"), by and through their attorneys, JOHNSON & KROL, LLC, and complain of the Defendants, ELMAR HOTEL MANAGEMENT, LLC ("ELMAR"), HANNA KARCHO a/k/a HANNA KARCHO-POLSELLI ("KARCHO"), and REMO POLSELLI ("POLSELLI"), as follows:

Page 1 of 12

## JURISDICTION AND VENUE

1. Counts I and II of this action arise under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA") (29 U.S.C. §§ 1132 and 1145). The Court has jurisdiction over the subject matter pursuant to 29 U.S.C. §§ 1132 and 1145, as well as 28 U.S.C. § 1331.

2. Count III of this action alleges common law breach of contract against ELMAR. The Court has supplemental jurisdiction over the subject matter of Count III pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 29 U.S.C. §1132(e)(2) in that the WELFARE FUND, SAVINGS FUND, and TRAINING FUND are administered at 2260 S. Grove Street, Chicago, Illinois, and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the Northern District of Illinois, Eastern Division.

## PARTIES

4. The WELFARE FUND, SAVINGS FUND, and TRAINING FUND receive contributions from numerous employers pursuant to collective bargaining agreements negotiated between the International Union of Operating Engineers of Chicago, Illinois and Vicinity Local No. 399 ("Union") and employers, and is therefore a multi-employer plan under 29 U.S.C. § 1002.

5. The Union is the bargaining representative of Defendant ELMAR's bargaining unit employees.

6. Defendant ELMAR is a Michigan limited liability company.

7. Defendant ELMAR operates the Inn of Chicago located at 162 E. Ohio Street, Chicago,

Illinois.

8. Defendant KARCHO is a Manager and Member of ELMAR.

9. Defendant POLSELLI is a Member of ELMAR.

## COUNT I
## BREACH OF THE COLLECTIVE BARGAINING AGREEMENT - ELMAR

10. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-9 of this Complaint with the same force and effect as if fully set forth herein.

11. Effective March 29, 2021, ELMAR signed an Assumption Agreement with the Union which bound ELMAR to the terms and conditions of a Collective Bargaining Agreement ("CBA") between Highgate Hotels L.P., a Delaware Limited Partnership, and the Union. (A copy of the Assumption Agreement is attached as **Exhibit 1**; a copy of the CBA is attached as **Exhibit 2**).

12. The CBA remains in effect.

13. Through the CBA, ELMAR also became bound by the provisions of the Agreements and Declarations of Trust ("Trust Agreements") that created the WELFARE FUND, SAVINGS FUND, and TRAINING FUND.

14. Pursuant to the Trust Agreements, the Trustees adopted the Collection and Audit Policy ("Collection Policy") to administer audits and the collection of contributions from contributing employers. (A copy of the Collection Policy is attached as **Exhibit 3**).

15. Pursuant to the provisions of the CBA, the Trust Agreements, and the Collection Policy, ELMAR is required pay monthly contributions to the WELFARE FUND for all bargaining unit employees.

16. WELFARE FUND contributions are billed in the third week of the month preceding the month being billed, and payment is due the first day of the month following the month

being billed.

17. Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the WELFARE FUND's Trust Agreement, and the Collection Policy, employers who fail to submit their monthly contributions to the WELFARE FUND within ninety (90) days of the due date, are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

18. ELMAR failed to submit contributions to the WELFARE FUND for the months of April 2025, May 2025, June 2025, July 2025, August 2025, and September 2025 in the aggregate amount of $43,383.84.

19. As a result of ELMAR's failure to submit contributions to the WELFARE FUND for April 2025 and May 2025 within ninety (90) days of the due date, ELMAR owes the WELFARE FUND liquidated damages totaling $2,352.00.

20. Pursuant to the provisions of the CBA, the TRAINING FUND's Trust Agreement and the Collection Policy, ELMAR is required to pay annual contributions to the TRAINING FUND for all active, full-time, bargaining unit employees as of September 1st of each year of the CBA.

21. TRAINING FUND contributions for ELMAR are billed in July and payment is due on September 1st of each year of the CBA.

22. Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the TRAINING FUND's Trust Agreement, and the Collection Policy, employers who fail to submit their annual contributions to the TRAINING FUND within ninety (90) days of the due date, are responsible for the payment of liquidated damages equal to 10% of the amount

unpaid, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

23. ELMAR failed to submit annual contributions totaling $5,312.00 to the TRAINING FUND for its active, full-time employees as of September 1, 2025.

24. Pursuant to the provisions of the CBA, the SAVINGS FUND's Trust Agreement, and the Collection Policy, ELMAR is required to deduct elective deferrals from the paychecks of participating bargaining unit employees and remit payment of those elective deferrals to the SAVINGS FUND by the fifteenth (15th) day of the month following the month in which the elective deferrals were withheld.

25. Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the SAVINGS FUND's Trust Agreement, and the Collection Policy, employers who fail to submit elective deferrals to the SAVINGS FUND by the fifteenth (15th) day of the month following the month in which the elective deferrals were withheld, are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, interest equal to ten percent (10%) per annum from the due date until the payment is received, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

26. ELMAR failed to timely submit elective deferrals to the SAVINGS FUND for April 2025 and May 2025 in an unknown amount.

27. As a result of ELMAR's failure to timely submit elective deferrals to the SAVINGS FUND for April 2025 and May 2025, ELMAR owes the SAVINGS FUND interest in an unknown amount.

28. Plaintiffs have been required to employ the undersigned attorneys to collect the monies

that are due and owing from ELMAR.

29. ELMAR is obligated to pay the reasonable attorney's fees and court costs incurred by the Plaintiffs pursuant to the CBA, Trust Agreements, Collection Policy, and 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE**, Plaintiffs respectfully request:

A. That Judgment be entered in favor of the WELFARE FUND and against ELMAR in the aggregate amount of $45,735.84 for its breach of the CBA, itemized as follows:

    i. $43,383.84 in unpaid contributions; and

    ii. $2,352.00 in liquidated damages;

B. That Judgment be entered in favor of the TRAINING FUND and against ELMAR in the aggregate amount of $5,312.00 for its breach of the CBA;

C. That this Honorable Court enter an order requiring ELMAR to submit reports to the SAVINGS FUND detailing the elective deferrals withheld for the months of April 2025 and May 2025;

D. That Judgment be entered in favor of the SAVINGS FUND and against ELMAR for all elective deferrals, liquidated damages, and interest found to be due and owing based on the reports showing elective deferrals for the months of April 2025 and May 2025;

E. That this Honorable Court enter Judgment in favor of Plaintiffs and against ELMAR for any amounts discovered to be owed in addition to those set forth in Paragraphs A through D above;

F. That ELMAR be ordered to pay the reasonable attorney's fees and costs incurred by the WELFARE FUND pursuant to the CBA, Trust Agreement, Collection Policy, and 29 U.S.C. § 1132(g)(2)(D); and

G.  That Plaintiffs have such other and further relief as the Court may deem just and equitable all at ELMAR's cost pursuant to 29 U.S.C. § 1132(g)(2)(E).

## COUNT II
## BREACH OF FIDUCIARY DUTY – REMO POLSELLI & HANNAH KARCHO-POLSELLI

30. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-29 of this Complaint with the same force and effect as if fully set forth herein.

31. Pursuant to the provisions of the CBA, the SAVING FUND's Trust Agreement, and the Collection Policy, POLSELLI and KARCHO are required to deduct elective deferrals from the paychecks of participating bargaining unit employees and remit payment of those elective deferrals to the FUND by the fifteenth (15th) day of the month, following the month in which the deductions were made.

32. Section 2510.3-102(a)(1) of the Department of Labor's Regulations (29 C.F.R. § 2510.3-102(a)(1)) defines a plan asset as "amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets."

33. Section 3(21)(A) of ERISA (29 U.S.C. § 1002(21)(A)) provides that "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of plan assets . . . ."

34. Section 404(a)(1) of ERISA (29 U.S.C. § 1104(a)(1)) requires that a fiduciary act "for the exclusive purpose of providing benefits to the participants and beneficiaries" and act "with the care, skill, prudence and diligence under the circumstances then prevailing that a

prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." .

35. Upon information and belief, POLSELLI, as a Member of ELMAR, and KARCHO, as a Member and Manager of ELMAR, withheld elective deferrals from employees' paychecks for hours worked during the months of April 2025 and May 2025.

36. POLSELLI, in his capacity as a Member of ELMAR, and KARCHO, in her capacity as a Member and Manager of ELMAR, failed to remit to the SAVINGS FUND, the elective deferrals that were withheld from their bargaining unit employees' paychecks during the months of April 2025 and May 2025 in unknown amounts.

37. The withheld SAVINGS FUND deferrals became plan assets on the day they became due and owing to SAVINGS FUND, the fifteenth (15th) day of the calendar month following the calendar month during which the elective deferrals were withheld.

38. Consequently, POLSELLI and KARCHO became fiduciaries when they failed to remit timely payment of the SAVINGS FUND deferrals, as they exercised discretionary authority and control over plan assets.

39. As a result of their failure to remit timely payment of the elective deferrals to the SAVINGS FUND, POLSELLI and KARCHO breached their fiduciary duties to the SAVINGS FUND, as they failed to act for the exclusive purpose of providing benefits to the participants when they failed to remit timely payment of the SAVINGS FUND deferrals.

40. POLSELLI and KARCHO also failed to act with the requisite care, skill, prudence and diligence imposed upon them by ERISA when they failed to remit timely payment of the SAVINGS FUND deferrals to the SAVINGS FUND.

41. Plaintiffs have been required to employ the undersigned attorneys to collect the monies

that are due and owing from POLSELLI and KARCHO.

42. POLSELLI and KARCHO are obligated to pay the reasonable attorneys' fees and court costs incurred by the SAVINGS FUND pursuant to the CBA, SAVINGS FUND's Trust Agreement, and 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE,** Plaintiffs respectfully request:

A. That this Honorable Court enter an order requiring POLSELLI and KARCHO to submit reports to the SAVINGS FUND detailing the elective deferrals withheld for the months of April 2025 and May 2025;

B. That Judgment be entered in favor of the SAVINGS FUND and against POLSELLI and KARCHO for all elective deferrals, liquidated damages, and interest found to be due and owing based on the reports showing elective deferrals for the months of April 2025 and May 2025;

C. That Judgment be entered in favor of the SAVINGS FUND and against POLSELLI and KARCHO for any and all unpaid elective deferrals, along with the resulting liquidated damages and interest, that are found to be due and owing in addition to the amounts referenced in Paragraph B above;

D. That Defendants POLSELLI and KARCHO be ordered to pay reasonable attorneys' fees and costs incurred by the Plaintiffs pursuant to the CBA, Trust Agreement, and 29 U.S.C. §1132(g)(2)(D); and

E. That Plaintiffs have such other relief and further relief as the Court may deem just and equitable all at Defendants POLSELLI and KARCHO's cost, pursuant to 29 U.S.C. § 1132(g)(2)(E).

## COUNT III
## COMMON LAW BREACH OF CONTRACT

43. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-42 of this Complaint with the same force and effect as if fully set forth herein.

44. ELMAR entered into a Settlement Agreement with the WELFARE FUND and Union in May 2024 to resolve delinquencies with the WELFARE FUND and Union. (A copy of the Settlement Agreement is attached as **Exhibit 4**).

45. Paragraph 3 of the Settlement Agreement required ELMAR to, *inter alia*, timely submit payment of contributions to the WELFARE FUND and TRAINING FUND, as well as dues to the Union for eighteen (18) continuous months from May 2024 through October 2025. (**Exhibit 4**).

46. Paragraph 3 of the Settlement Agreement also provided that failure to pay contributions and union dues by the due date shall result in a default of the Settlement Agreement. (**Exhibit 4**).

47. Paragraph 9 of the Settlement Agreement provides:

> Failure by ELMAR to pay ongoing contribution and union dues in a timely manner pursuant to Paragraph 3 of this Agreement shall constitute a default of this Agreement.

(**Exhibit 4**).

48. Paragraph 10 of the Settlement Agreement provides:

> Upon a default of this Agreement, (a) ELMAR shall be required to pay $7,805.20 in liquidated damages for the periods itemized in the recitals within ten (10) days of a demand being sent by the WELFARE FUND and/or its attorneys; (b) the WELFARE FUND and [Union] may initiate a new lawsuit for breach of this Agreement seeking damages for all amounts required to be paid by this Agreement; (d) ELMAR confesses judgment for any and all unpaid amounts due under this Agreement; and (e) in the event the WELFARE FUND and/or [Union] are required to engage an attorney to collect any amounts due under this Agreement, ELMAR shall be liable for all reasonable attorney's fees and costs incurred by the WELFARE FUND and/or [Union].

49. ELMAR failed to timely pay the contributions to the WELFARE FUND from April 2025 through September 2025.

50. ELMAR failed to timely pay the contributions to the TRAINING FUND for September 1, 2025, through August 31, 2026.

51. Defendants' failure to remit timely remit contributions to the WELFARE FUND and TRAINING FUND is a material breach of the terms of the Settlement Agreement.

52. Pursuant to the Settlement Agreement, ELMAR owes liquidated damages to the WELFARE FUND in the amount of $7,805.20.

53. The WELFARE FUND's attorneys demanded payment of the liquidated damages on September 30, 2025.

54. Pursuant to the Settlement Agreement, ELMAR is obligated to pay the reasonable attorney's fees and court costs incurred by the WELFARE FUND.

**WHEREFORE,** Plaintiffs respectfully request:

A. That Judgment be entered in favor of the WELFARE FUND and against ELMAR in the amount of $7,805.20 for breach of the Settlement Agreement;

B. That ELMAR be ordered to pay the reasonable attorneys' fees and costs incurred by the WELFARE FUND pursuant to the Settlement Agreement; and

C. That the WELFARE FUND have such other and further relief as the Court may deem just and equitable all at ELMAR's cost.

Respectfully Submitted,

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST** *et al.*

/s/ William M. Blumthal, Jr. - 6281041
One of the Plaintiffs' Attorneys

**JOHNSON & KROL, LLC**
311 S. Wacker Drive, Suite 1050
Chicago, Illinois 60606
(312) 757-5477
blumthal@johnsonkrol.com